**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RAYMOND JOHNSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 8:26-cv-00341-PX |
| | * | |
| WASHINGTON METROPOLITAN AREA | | |
| TRANSIT AUTHORITY, ET AL. | | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*

**<u>MEMORANDUM OPINION</u>**

Pending in this personal injury case are Plaintiff Raymond Johnson's Motion to Remand (ECF No. 9), Motion for Mediation and Settlement Conference (ECF No. 10), and Motion for Emergency Stay (ECF No. 19). Also pending are Washington Metropolitan Area Transit Authority ("WMATA") and WMATA General Manager, Randy Clarke's Motion to Dismiss the Complaint (ECF No. 7) and Defendants' Helmsman Management, LLC ("Helmsman"), Liberty Mutual Insurance Company ("Liberty"), and related individual Defendants' motion to dismiss or alternatively for summary judgment in their favor (ECF No. 15).[1] The Complaint consists of an amalgam of documents, vignettes and seemingly unrelated incidents strung together in one pleading. ECF No. 3. The Court summarizes the operative events below.

On December 7, 2022, two teenagers armed with a gun threatened Johnson at the Metro Center station in Washington, D.C. ECF No. 3 at 15. Johnson complains that WMATA's

---

[1] Johnson has clarified that only the defendants which appear on this Court's docket are the Defendants he intends to sue. ECF No. 21 at 4. For two such defendants, RATP Dev. USA ("RATP") and Phoenix Motorcars, Johnson does not appear to have perfected service on them. Accordingly, within fourteen days from the date of this Opinion and accompanying Order, Johnson much show cause as to why this Court should not dismiss the Complaint against RATP and Phoenix Motorcars without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

1

negligence is to blame. *Id.* at 16. Johnson thereafter submitted a proposed settlement agreement to WMATA's claims adjuster, Curtis Gilmer, and from this, contends that Gilmer and Defendant Anne Rice failed to pay him a $30,000 settlement. *Id.* at 15. On June 28, 2023, while Johnson was at the King Street Metro station in Alexandria, Virginia, a Metrobus attempted to hit him. ECF No. 3 at 28.

On September 30, 2024, Johnson was injured when the Metrobus on which he was riding hit a curb. ECF No. 3 at 19. Johnson submitted a claim to the bus operator, RATP Dev. USA ("RATP") through its third-party administrator, Helmsman, and insurance company, Liberty. *Id.* at 20. On October 7, 2024, Johnson spoke with an insurance adjuster, Tashana Taylor, who, according to Johnson, reached an "oral" agreement to settle Johnson's claim for $67,000 but then breached that agreement by "[sending] a bad faith insurance claim denial within 24 hours of speaking" to him. *Id.* at 22.

On July 6, 2025, Johnson was hit with debris when a car exploded near a Metro station in Washington D.C. ECF No. 3 at 16. Johnson faults WMATA Transit Police for "failing to do a police report" and states that Johnson sought to add his name to a "civil complaint for money." *Id.*

Now, Johnson sues all defendants for breach of contract and breach of implied contract because they did not pay Johnson $30,000 and $67,000 pursuant to purported "settlement agreements," and for "bad faith" denial of his claims (Count I & II); unspecified "racial discrimination" because Metrobuses have "stranded" unidentified passengers (Count III); defamation premised on RATP having sent a video during settlement discussions of the September 30, 2024, incident purporting to show the bus driver operating the Metrobus in a "normal" fashion (Count IV); "fraud" based on "false allegations" that the Metrobus driver was "driving normal" as grounds to not pay Johnson a settlement amount for the September 30, 2024, incident (Count V);

2

"detrimental reliance" because Johnson "believed the defendants would settle for $67,000.00" (Count VI); unjust enrichment because defendants refused to pay both settlement amounts (Count VII); intentional infliction of emotional distress ("IED") arising from the September 30, 2024, accident (Count VIII); and "invasion of privacy" arising from Johnson's provision of personal information to his former attorney in connection with the September 30, 2024, incident.  ECF No. 3 at 19–33.

Johnson initially filed suit in the Circuit Court of Maryland for Prince George's County against WMATA, Helmsman, Liberty, and an array of individual defendants whom Johnson has never served.  Defendant WMATA timely noted removal pursuant to Md. Code Ann., Transp. § 10-204(81) (West 2026), which confers original jurisdiction to hear "all actions" brought against WMATA, and which mandates removal to "the appropriate United States District Court."  The Court now resolves the presently pending motions, beginning with Johnson's.

## II.    Johnson's Motions

Johnson moves for remand because Maryland courts "can exercise jurisdiction" over WMATA and the amount-in-controversy does not exceed the threshold amount of $75,000 necessary to sustain diversity jurisdiction.  ECF No. 9 at 2–4.  When challenged, the removing party bears the burden of demonstrating that removal is proper with all ambiguity construed in favor of remand.  *See Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).  Because this Court explicitly retains original jurisdiction over all claims against WMATA, removal is plainly proper.  *Burns v. WMATA*, 488 F. Supp. 3d 210, 215 (D. Md. 2020); *see also Smith v. WMATA*, 290 F.3d 201, 206 (4th Cir. 2002).  Johnson does nothing to upend this principle. Thus, the remand motion (ECF No. 9) is denied.

Johnson next moves for this Court to compel mediation.  ECF No. 10.  Johnson specifically contends that mediation is preferable because he and Defendants had reached an "oral" agreement to settle the September 30, 2024, incident, a contention Defendants vigorously dispute.  ECF No. 3 at 22; ECF No. 10 at 5; ECF No. 14 at 2 (WMATA responding that the allegation of an "oral" settlement agreement is "absurd").  Even assuming such oral settlement offer existed, that does not automatically justify compelled mediation.  Although the Court's Local Rule 607.3 directs all parties with settlement authority to "attend each settlement conference held by the Court," neither this Rule nor any other provision requires such settlement conferences take place.  Nor will this Court order settlement absent agreement from the parties.  Johnson's nonspecific, uncorroborated claim of a rescinded settlement offer will not suffice.  The motion at ECF No. 10 is denied.

Last, as for Johnson's Motion for Emergency Stay, Johnson advances several arguments within the motion that are responses to the grounds for dismissal.  ECF No. 19 at 3–5.  But he gives the Court no basis to stay the case.  Accordingly, the request for "stay" is denied, but the content of the motion will be considered as a response to Helmsman and Liberty's dismissal motion.  The Court next turns to Defendants' motions.

### III.    Defendants' Motions to Dismiss

The Defendants collectively challenge the sufficiency of the Complaint for similar reasons. ECF Nos. 7, 15.  Although Helmsman and Liberty seek summary judgment in the alternative, formal discovery has not taken place, and so the Court declines to treat the motion as one brought under Rule 56.  *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor of Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013).  For ease, the Court will consider the motions to dismiss together, and as applied to each cause of action.

4

### A.   Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the Complaint.  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  A claim will survive dismissal if the factual allegations are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Johnson, who represents himself, is entitled to an especially charitable reading of his pleading so that all potentially viable claims proceed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But "even a pro se complaint must be dismissed if it does not allege a 'plausible claim for relief.'"  *Forquer v. Schlee*, Civil Action No. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679).

### B.   Analysis

At bottom, all claims are premised on Johnson's perceived entitlement to payment for his injuries based on his unilateral demands for settlement.  ECF No. 3.  None of the claims survive dismissal under Rule 12(b)(6).  First, regarding the contract-based claims, the Complaint baldly alleges that Defendants had agreed to settle the December 2022 and September 2024 incidents for $30,000 and $67,000 respectively, and that the failure to pay Johnson accordingly amounts to breach of an actual or implied contract.  ECF No. 3 at 19–24.  WMATA contends that no facts make the existence of a contract plausible to sustain breach of the same.  ECF No. 7-1 at 7.

Regardless of which state law applies,[2] the Complaint must make plausible that the parties reached a legally cognizable agreement, that is, a "meeting of the minds," on all material contractual terms, and evidenced an intent to be bound through offer, acceptance, and consideration. *See Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008) (quoting *Phillips v. Mazyck*, 273 Va. 630, 636 (2007)) ("mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts. Until the parties have a distinct intention common to both . . . there is a lack of mutual assent and, therefore, no contract."); *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995) (same); *Kiley v. First Nat'l Bank of Md.*, 102 Md. App. 317, 333 (Ct. Spec. App. 1994) (quoting 1 Richard A. Lord, *Williston on Contracts*, § 1:1, at 2–3 (4th ed. 1990)). Although the Complaint makes plausible that Johnson submitted a demand to settle the claims, ECF No. 3 at 9–13, no facts make plausible that Defendants accepted his terms. The mere conclusory assertion of "agreement," couched as a "fact," does not nudge the contract claims from possible to plausible. *See Iqbal*, 556 U.S. at 686. Thus, the counts must be dismissed as insufficiently pleaded.[3]

For similar reasons, the "detrimental reliance" claim (if it is even a proper cause of action),[4] premised on Johnson's belief the case would settle (Count VI), and an unjust enrichment claim premised on his dashed hopes of the same (Count VII), have no basis in the law or facts. ECF No.

---

[2]  WMATA correctly notes that the alleged incidents took place in Washington, D.C. and Virginia, complicating the question of which substantive state law applies. ECF No. 7-1 at 5–6. Because the common law in each jurisdiction is the same in all material respects, and for completeness, the Court cites to the relevant law for Washington, D.C., Virginia and Maryland for each claim.

[3]  Specific to Helmsman and Liberty, the Court also agrees that dismissal is warranted because an injured party may sue an insurer only after the injured party obtains a favorable judgment against the insured. *See* MD. CODE ANN., INS. § 19-102(b)(2) (West 2026); *WMATA v. Queen*, 324 Md. 326, 332 (1991) (citing *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 257–59, 264–65 (1990)) ("Once there is a verdict or judgment in the tort action, a direct action may be maintained against the liability insurer."). Absent a final judgment in Johnson's favor which triggers the insurers' duty to pay under the relevant insurance policies, a direct action cannot proceed.

[4]  WMATA also argues in passing the claim is barred because it has not waived sovereign immunity. ECF No. 7-1 at 9. The contention is woefully underdeveloped and because the Court is not convinced that "detrimental reliance" can proceed as a standalone cause of action, it cannot reach the question of sovereign immunity as WMATA presents the argument.

3 at 27.  Johnson could not have "relied" to his detriment on a settlement agreement if the Defendants never made Johnson a clear and definite offer or promise to pay.  *See Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166 (1996); *see also Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130–31 (D.C. 2015) (explaining detrimental reliance as a part of a fraud claim); *Jared & Donna Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 245–46 (2012) (same). Nor can Defendants be unjustly enriched because they did not pay amounts Johnson was hoping to extract, but for which they had no obligation to deliver.  *Cf. T. Musgrove Constr. Co., Inc. v. Young*, 298 Va. 480, 486 (2020) (unjust enrichment applies when plaintiff confers on defendant a benefit, defendant knew of the benefit and should expect to pay, and defendant accepted the benefit without paying for its value); *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (same); *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295–96 (2007) (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659 (Ct. Spec. App. 2005)) ("A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'").

Next, neither the defamation or "fraud" claims (Counts IV and V) succeed.  ECF No. 3 at 25–26.  A defamation claim proceeds only where the complaint makes plausible that the defendant made a provably false statement that injured the plaintiff.  *Schaecher v. Bouffault*, 290 Va. 83, 98 (2015) (quoting *Cashion v. Smith*, 286 Va. 327, 336 (2013)) ("For a statement to be actionable, it must have a provably false factual connotation and thus [be] capable of being proven true or false.") (internal quotation marks and citation omitted); *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (defamatory statement must be made to third person and false); *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1241 (D.C. 2016) (as amended Dec. 13, 2018) (statements of opinion are

not actionable unless they "imply a provably false fact, or rely upon stated facts that are provably false"). Differences of opinion about what is depicted in a video during settlement discussions are neither publicly made nor provably false. Thus, the defamation claim fails.

Further, a mere difference of opinion cannot be actionable in fraud, if for no other reason than that Johnson was not *deceived* by anything. *See Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (fraud requires a false representation of a material fact made with the intent to deceive the plaintiff); *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (same); *Gross v. Sussex Inc.*, 332 Md. 247, 259–60 (1993) (fraud requires the intentional "making of a false statement" with "the intention that it be acted upon by the other party"). Defendants openly disagreed with Johnson about whether the bus operator drove the bus negligently. Defendants did not hide or misrepresent their disagreement. Thus, the Complaint fails to plead a material misrepresentation actionable in fraud.

Nor can the IIED claim (Count VIII) proceed. ECF No. 3 at 28–32. IIED claims are reserved for only the most shocking circumstances where a defendant's extreme and outrageous acts cause the plaintiff severe emotional distress. *Tavakoli-Nouri v. Maryland*, 139 Md. App. 716, 728 (Ct. Spec. App. 2001); *see also Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 164 (D.C. 2013); *Almy v. Grisham*, 273 Va. 68, 77–78 (2007). The claim survives challenge "sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Savage v. Mayor of Salisbury*, Civil Action No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010) (citation omitted). Injuries sustained by Johnson on two occasions and failed settlements simply do not amount to the kind of extraordinarily outrageous acts necessary to make plausible the claim.

Lastly, as to the "discrimination" and "invasion of privacy" claims (Counts III and IX), ECF No. 3 at 24–25, 32–33, the discrimination claim makes little sense and is not grounded in any

constitutional or statutory violation.  The Court cannot discern how late-arriving Metrobuses alone can satisfy any such claim.  And as for the "invasion of privacy," the cause of action is pleaded against Johnson's own attorneys, not the Defendants.  The claims too are dismissed.

**IV.    Conclusion**

For the above-stated reasons, the motions to dismiss the Complaint are granted.  The Complaint is hereby dismissed without prejudice as to Clarke, WMATA, Helmsman and Liberty.

A separate Order follows.


July 14, 2026                                                  /s/                                          
Date                                    Paula Xinis
                                        United States District Judge